IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERESA THOMPSON                                                    PLAINTIFF


V.                            Civil No. 4:25-cv-04058-JTS-MEF


FRANK BISIGNANO, Commissioner,
Social Security Administration                                     DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Teresa Thompson, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (the "Commissioner")

denying her claim for a period of disability, disability insurance benefits ("DIB"), and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act

(hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the

Court must determine whether there is substantial evidence in the administrative record to support

the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.        Procedural Background

Plaintiff filed her applications for SSI and DIB on January 23, 2023, and January 27, 2023,

respectively, alleging an onset date ("AOD") of May 16, 2020, due to bipolar depression, manic

depression, mood swings, anxiety, panic attacks, memory problems, migraine headaches, an

irregular heartbeat, muscle spasms in her back, and arthritis in her back and left side.  (ECF No. 7,

pp. 52, 61, 70, 106-107, 187-196, 251).  The Commissioner denied her applications initially and

on reconsideration, and an administrative hearing was held before Administrative Law Judge

("ALJ") Mary Abbondondelo on August 19, 2024. (*Id.* at 37-50). The Plaintiff was present for the hearing and represented by counsel.

On her alleged onset date, Plaintiff was 48 years old and possessed a high school education. (ECF No. 7, pp. 30, 252). Despite past work experience as a certified nurse aid and truck driver, the ALJ found she had no past relevant work ("PRW"). (*Id.* at 30, 252, 259-266).

In an unfavorable decision dated October 24, 2024, ALJ Abbondondelo concluded that the Plaintiff's hypertension; atrial fibrillation; obesity; major depressive disorder; post-traumatic stress disorder; and migraine headaches were severe but did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 7, p. 25). Despite Plaintiff's impairments, the ALJ determined she retained the residual functional capacity ("RFC") to perform light work involving simple tasks; contact with supervisors and coworkers no more than 2/3 of the day; contact with the public no more than 1/3 of the day; occasional stooping and balancing; and no kneeling, crouching, or crawling. (*Id.* at 27). Based on the VE's testimony, the ALJ determined Plaintiff could perform work as a router, housekeeper/cleaner, and price marker. (*Id.* at 31).

On May 28, 2025, the Appeals Council denied Plaintiff's request for review (ECF No. 7, pp. 5-10), and she subsequently filed her Complaint (ECF No. 2) to initiate this action. Both parties have filed appeal briefs (ECF Nos. 10, 13), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to

2

support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

3

given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Discussion

Plaintiff raises three issues on appeal: (1) whether the ALJ properly assessed her subjective complaints; (2) whether the ALJ's RFC determination is supported by substantial evidence; and (3) whether the ALJ erred at Step Five.

### A.    Subjective Complaints

Initially, the Plaintiff argues that the ALJ did not properly assess her subjective complaints because he based his conclusion that her statements about the intensity, persistence, and limiting effects of her symptoms were not supported by the record solely on the absence of objective medical evidence to support them. While the ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, he may disbelieve subjective reports that are inherently inconsistent with other evidence. *Lowe v. Apfel*, 226 F.3d 969, 971–72 (8th Cir. 2000); *see also Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)).

The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not required to methodically discuss each factor if the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe*, 226 F.3d at

4

971–72.  The Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Thus, the ALJ's analysis will be accepted if the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. *Lowe*, 226 F.3d at 972.

Contrary to the Plaintiff's contention, after discussing the medical evidence of record and Plaintiff's reported daily tasks; cocaine use; Plaintiff's ability to live alone and perform household chores with assistance; reports to her physicians regarding the duration, frequency, and intensity of her symptoms; the type of treatment prescribed; the responsiveness of her symptoms to said treatment; treatment noncompliance; and her testimony at the administrative hearing, the ALJ stated:

> the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and *other evidence in the record* for the reasons explained in this decision.

(ECF No. 7, p. 29).  S*ee Pierce v. Kijakazi*, 22 F.4th 769, 772-73 (8th Cir. 2022) (ALJ properly discounted claimant's allegations, as he considered discrepancies between pain complaints and objective examination results, and relatively conservative course of treatment); *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (claimant found not disabled where ALJ considered "situational stressors related to legal problems and family issues"); *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding no error in the ALJ's determination that claimant was not disabled based upon mental impairments where "[t]he medical record supports the conclusion that any depression experienced by Gates was situational in nature, related to marital issues, and improved with a regimen of medication and counseling.").  Giving Plaintiff the benefit

5

of the doubt, ALJ Abbondondelo concluded that her abdominal, back, and knee pain; variably controlled blood pressure and arrythmia; and obesity "would limit her to light work with additional limitations in performing postural activities." (*Id*.). And she determined Plaintiff's mental impairments, "including a long history of PTSD, depression, and anxiety with variable control despite counseling and medications," exacerbated by her illicit drug use, would not prevent the Plaintiff from performing simple tasks with limited interaction with others were exacerbated by her drug use. (*Id*. at 29-30). Because the ALJ's credibility analysis is supported by good reasons and substantial evidence, we will defer to her findings. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

## B.    RFC Determination

The ALJ ultimately concluded that the Plaintiff retained the RFC to perform a limited range of light work. Plaintiff insists that this RFC fails to account for her depression and mental impairments, arthritis, and migraine headaches. Following a review of the record, however, the undersigned disagrees.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Although it must be based on all relevant evidence in the record, including medical records, observations of treating physicians and others, limitations resulting from factors such as pain, and the claimant's own descriptions of her limitations, there is no requirement that the ALJ rely on a particular medical source in determining the RFC. *Id*. at § 404.1545(a)(3); *see also Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016);

6

*Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (discussing factors to be considered in RFC). It is the ALJ's duty to assess all the evidence, resolve any inconsistencies, and formulate an RFC finding that reflects all the Plaintiff's functional limitations. *See* 20 C.F.R. §§ 404.1529, 404.1545, 404.1546.

### 1.    Mental Impairments

Plaintiff maintains that she cannot perform the range of light work assessed by the ALJ at the full-time level because her depression and mental impairments would force her to miss one to two days of work per week; however, limitations cannot be established by Plaintiff's self-reports alone. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Plaintiff provides no evidence regarding the medical necessity of her appointments' duration or frequency and fails to demonstrate that her treatment must occur during working hours. *Andrew B. v. Kijakazi*, No. 22-CV-2053 (PAM/LIB), 2023 WL 2760519, at *2 (D. Minn. Apr. 3, 2023); *see Gregory v. Comm'r Soc. Sec.*, 742 F. App'x 152, 156 (8th Cir. 2018) ("[T]he record is unclear why [plaintiff] would need to miss an entire day of work to have his blood tested.").

Plaintiff also avers that her depression necessitated inpatient mental health treatment. While it is true that the Plaintiff was admitted for suicidal ideations and depression in December 2018 (ECF No. 7, pp. 344-466; ECF No. 7-2, pp. 258-274), and again in August 2020, both times she admitted using K2 and cocaine prior to the episode. Thereafter, Plaintiff received only conservative treatment at Genesis PrimeCare Family Medicine through December 2023 for both mental and physical symptoms, including counseling. (ECF No. 7-1, pp. 77-102, 164-236, 205-247; ECF No. 7-2, pp. 8-191, 282-283). She was frequently anxious and/or depressed (*Id.*), but

was also noted to be fully oriented, cooperative, and attentive with good impulse control, judgment, and insight and intact thought processes. (*Id.*) Moreover, mental status exams conducted by other providers over the same period documented a normal mood, affect, and behavior. (ECF No. 7-1, pp. 14-28, 77-102, 149-152, 237-247, 281-284, 288-291, 298-301, 305-307, 311-314; ECF No. 7-2, pp. 215-225; ECF No. 7-3, pp. 1-43, 53-69, 72-77, 86-87, 99-130, 146-184, 192-206).

Emergency Room records dated November 12, 2021, and January 1, 2024, show that Plaintiff tested positive for both cocaine and opiates. (ECF No. 7-1, pp. 103-137, 248-249; ECF No. 7-2, pp. 226-233, 279-280; ECF No. 7-3, pp. 1-22). When sober and compliant with treatment, Plaintiff reported that her symptoms were responsive to the medications prescribed, which included Sertraline and a Benzodiazepine. (ECF No. 7-1, pp. 193-198, 202-204, 213-221; ECF No. 7-2, pp. 50-52, 58-60, 110-112, 118-120, 147-148, 154-155). In December 2022, however, Advanced Practical Registered Nurse ("APRN") Jody Barham noted that the Plaintiff needed to re-establish therapy services because she had not been consistent with treatment. (ECF No. 7-1, pp. 229-231; ECF No. 7-2, pp. 39-41, 100-101). And, in July 2023, Licensed Professional Counselor ("LPC") Adrian Owen noted another lapse in treatment. (ECF No. 7-2, pp. 29-31, 92-93, 141-142, 181-182). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). Thereafter, she resumed treatment through December 2023. Unfortunately, neither provider completed a medical source statement detailing the effect of Plaintiff's mental impairments on her ability to function in the workplace.

APRN Deanna Padgett conducted a mental status exam of the Plaintiff in August 2023. (ECF No. 7-1, pp. 268-273). After diagnosing major depressive disorder and anxiety, she opined

that Plaintiff would have no limitations in day-to-day adaptive functioning and could communicate and interact in a socially adequate manner, cope with the typical mental/cognitive demands of basic school or work-like tasks, attend and sustain concentration on basic tasks, stay on task, and complete school or work-like tasks within an acceptable timeframe.

In September 2023, Dr. Diane Kogut reviewed the record and found the Plaintiff retained "the capacity for work where interpersonal contact is routine but superficial, e.g. grocery checker; complexity of task is learned by experience, several variables, judgment within limits; supervision is little for routine but detailed for non-routine." (ECF No. 7, pp. 54-58, 64-67). She noted moderate limitations in the following areas: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. Dr. Rachel Morrisey conducted an independent review of the record in March 2024. (ECF No. 7, pp. 73-74). In addition to the limitations noted by Dr. Kogut, she noted moderate limitations in Plaintiff's ability to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the public.

Based on this evidence, we find that the record supports the ALJ conclusion that the Plaintiff could perform simple tasks; have contact with supervisors and coworkers up to 2/3 of the day; and have contact with the public no more than 1/3 of the day.

### 2.    Arthritis

Relying on her subjective complaints of lower back pain radiating down her leg, an x-ray documenting arthritis (ECF No. 7-3, pp. 73-75, 107-117, 161-171), and Plaintiff's testimony that

she experiences pain and muscle spasms in her back and knees making it difficult stand up, sit down, and walk, Plaintiff also contends that she cannot perform the range of light work found by the ALJ.  *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").  While we do note that spasms were often noted in her left paraspinal muscle (ECF No. 7-1, pp., 164-167, 171-179; ECF No. 7-2, pp. 133-136, 143-146; 156-159; ECF No. 7-3, pp. 23-43), all exams documented normal motor strength in all extremities, intact sensation, and a normal gait.  (ECF No. 7-1, pp. 14-28, 77-102, 164-167, 171-179, 237-247, 281-284, 288-291, 298-301, 305-307; ECF No. 7-2, pp. 133-136, 143-146, 156-159, 215-225; ECF No. 7-3, pp. 53-69, 79-86, 87-94).  In fact, most of Plaintiff's pain complaints were of epigastric pain, not arthritic pain.  She only complained of lower back, hip, and/or knee pain on a few occasions for which muscle relaxers were prescribed.  (ECF No. 7-1, pp. 164-179; ECF No. 7-2, pp. 133-136, 143-146, 156-159; ECF No. 7-3, pp. 73-75, 107-117, 138-145, 161-171, 192-199).

Plaintiff's medical providers placed no restrictions on her and voiced no opinion regarding her ability to perform work-related activities.  *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).  On March 25, 2024, Dr. Brett Alberty found Plaintiff could perform light work with occasional posturals.  (ECF No. 7, pp. 75-76).  Giving Plaintiff the benefit of the doubt, the ALJ limited her light work with occasional stooping and balancing and no kneeling, crouching, or crawling.  Based on the record before this Court, we find that substantial evidence supports the ALJ's physical RFC.

### 3.    Migraine Headaches

Lastly, the Plaintiff claims that the RFC does not reflect the limitations imposed by her migraine headaches.  Once again, she relies on her own testimony that she experiences two to three

10

headaches per week lasting seven or eight hours during which she cannot move or tolerate light and sound. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Plaintiff has pointed to no objective evidence to document the alleged frequence or severity of her headaches.

Her treatment for migraines does date back to December 2021, at which time she was prescribed Fioricet and Topamax. However, this Court finds only three records where she listed migraine headaches as one of her primary complaints for which she sought treatment. (ECF No. 7-1, pp. 41-51; ECF No. 7-3, pp. 72-73, 99-106, 153-160). In December 2021, Dr. Priyal Patel increased her Topamax dosage. (ECF No. 7-3, pp. 72-73, 99-106, 153-160). Thereafter, aside from listing migraines in her medical history, there was further mention of migraines and certainly no claims that she was experiencing headaches as frequently as she now alleges.

The record does indicate that her medical providers continued to prescribe Topamax throughout the relevant period (ECF No. 7-1, pp. 196-198, 202-204, 215-218, 229-231, 234-236; ECF No. 7-2, pp. 32-34, 39-41, 54-56, 94-96, 100-101, 114-116, 147-148, 152-153), but they were unable to continue the Fioricet due to her illicit drug use. (ECF No. 7-3, pp. 72-73, 86-87, 99-106, 146-152, 153-160, 200-206). Accordingly, because the record does not support the inclusion of additional restrictions related to her migraine headaches, the ALJ's RFC determination will stand.

### C.    Step Five Determination

Plaintiff's final argument is an extension of her RFC argument. She asserts that the ALJ's Step Five determination is flawed because the hypothetical question posed to the vocational expert did not include all her limitations. Because the ALJ's hypothetical to the vocational expert ("VE") captured the concrete consequences of the Plaintiff's impairments, however, we conclude that the ALJ properly relied on the VE's testimony identifying other jobs existing in substantial numbers

11

the Plaintiff could perform. *See Scott v. Berryhill*, 855 F.3d 853, 857-58 (8th Cir. 2017) (discussing VE testimony).  Therefore, there is no Step Five error.

### IV.    Conclusion

For the reasons and upon the authorities discussed above, it is RECOMMENDED that the ALJ's decision be affirmed, and that the Plaintiff's Complaint (ECF No. 2) be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of July 2026.

/s/ Mark E. Ford

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

12